UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Equal Employment Opportunity
Commission,

      Plaintiff,

Monica p. Ways,

      Plaintiff-Intervener,

-V-

      Case No. 2:06-cv-00233
      Judge Michael H. Watson

Honda of America, Mfg., Inc.,

      Defendant.

## OPINION AND ORDER

Plaintiff brings claims under Title VII of the Civil Rights Act of 1964, asserting that defendant terminated plaintiff-intervener's employment on the basis of plaintiff-intervener's race and in retaliation for plaintiff-intervener engaging in protected activities. In a separate complaint, plaintiff-intervener asserts various additional claims under Title VII and state law. This matter is before the Court on defendants' motion for partial dismissal of plaintiff-intervener's claims (Doc. 24). Defendant argues, *inter alia*, that plaintiff-intervener failed to exhaust her administrative remedies with respect to her Title VII hostile work environment and disparate impact claims, and that she failed to plead fraud with particularity. For the reasons that follow, the Court grants defendants' motion for partial dismissal.

### I. Facts

The Court accepts as true the following well-pleaded facts set forth in plaintiff-intervener's complaint (Doc. 17). Plaintiff Equal Employment Opportunity Commission

("EEOC") is an agency of the United States. Plaintiff-intervener Monica P. Ways ("Ways") is an African-American female citizen of the United States. She resides in Ohio. Defendant Honda of America Mfg., Inc. ("Honda") is an employer within the meaning of Title VII. Ways worked for Honda as its Senior Manager for Diversity Management and Ethics from February 3, 2003 until Honda terminated her employment on April 19, 2004.

Honda recruited Ways while she was working as the Executive Director of the Dayton, Ohio region of the National Conference for Community Justice. Although she does not identify the declarant, Ways alleges that she was told that she was being hired to create a more diverse workforce at Honda.

Throughout her employment at Honda, Ways was supervised by Rick Schostek ("Schostek"). Schostek held the positions of Vice President of Support Services and General Counsel, as well as EEO Compliance Officer, Secretary of Honda's Board of Directors, and Acting Chief Financial Officer.

For about the first nine months of her employment at Honda, Ways observed that Schostek seemed engaged in and receptive to her ideas and approach for increasing diversity at Honda. Ways avers, however, that Schostek's attitude toward her began to change as she questioned Honda's employment and business practices. Ways maintains that Schostek and others began to intentionally frustrate her efforts to create a more diverse, inclusive and ethical environment at Honda.

At one point, Schostek became visibly agitated when Ways refused to sign Equal Opportunity Surveys without first seeing the compensation data used to compile Honda's response. Ways was also accused of being disrespectful towards an attorney

who worked with the law firm that served as Honda's outside legal counsel. On April 19, 2004, Honda terminated Ways' employment. Ways filed a timely charge of discrimination with the EEOC, and moved to intervene in this lawsuit within the prescribed statute of limitations.

## II. Motion to Dismiss

Defendants move to dismiss plaintiff's claims pursuant to Fed. R. Civ. P. 12(1), for lack of jurisdiction, 12(b)(6), for failure to state a claim upon which relief can be granted, and 9(b), for failure to plead fraud with particularity.

A motion to dismiss for failure to state a claim should not be granted unless it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 508 (2002); *Thomas v. Eby,* 481 F.3d 434, 437 (6th Cir. 2007). The complaint need only put a party on notice of the claim being asserted against it to satisfy the requirement of stating a claim upon which relief could be granted. Fed. R. Civ. P. 8; *Memphis, Tennessee Area Local, American Postal Workers Union, AFL-CIO v. City of Memphis,* 361 F.3d 898, 902 (6th Cir. 2004). "A complaint need not anticipate every defense and accordingly need not plead every response to a potential defense. *Id.* All well-pleaded allegations must be accepted as true and be construed in favor of the non-movant. *Thomas,* 481 F.3d at 437; *Trzebuckowski v. City of Cleveland,* 319 F.3d 853, 855 (6th Cir. 2003).

## III. Discussion

Honda seeks dismissal of Ways' Title VII disparate impact claim (Claim Three) and her Title VII hostile work environment claims (Claims Five and Thirteen) on the

ground that Ways failed to exhaust her administrative remedies. Honda moves to dismiss Ways' Title VII and Ohio Revised Code disparate impact claims (Claims Three and Eleven) on the bases that Ways has failed to isolate and identify a specific policy that disparately impacted African-Americans, and that Ways lacks standing to assert disparate impact claims. Honda also requests dismissal of Ways' claim of wrongful discharge in violation of Ohio public policy (Claim Fourteen) on the ground that Ohio law does not recognize such a claim where, as here, statutory remedies exist. Honda seeks dismissal of Ways' common law fraud claim (Claim Sixteen) on the basis that Ways has failed to plead fraud with particularity. Honda also moves the Court to strike Ways' request for non-economic damages in connection with her Fifteenth Claim, breach of contract, and her Seventeenth Claim, promissory estoppel. The Court will address these grounds for dismissal *seriatim*.

### A. Failure to exhaust administrative remedies

Honda argues that the Court lacks jurisdiction over Ways' Title VII disparate impact and hostile work environment claims because Ways failed to exhaust her administrative remedies with respect to those claims.

A plaintiff seeking to assert a claim under Title VII in federal court must first exhaust her administrative remedies by submitting the claim in a charge timely filed with the EEOC. *Randolph v. Ohio Dept. of Youth Serv.,* 453 F.3d 724, 731 (6th Cir. 2006); *Tisdale v. Federal Express Corp.,* 415 F.3d 516, 527 (6th Cir. 2004). The purpose of the requirement is to afford the EEOC the opportunity to persuade the parties to enter a voluntary settlement, which is the preferred disposition of such claims. *Randolph,* 453 F.3d at 731. The requirement, however, is not rigid. *Id.* at 732. Hence, EEOC

complaints are construed liberally to encompass all claims "'reasonably expected to grow out of the charge of discrimination.'" *Id.* (quoting *Haithcock v. Frank,* 958 F.2d 671, 675 (6th Cir. 1992).

Ways filed a charge of discrimination with the EEOC on August 5, 2004. On the charge form, she indicated that Honda had discriminated against her based on race, sex and retaliation. The "particulars" portion of her charge states as follows in its entirety:

> I was hired on February 2, 2003 by Honda of America (hereinafter referred to as Respondent), most recently performing duties as a Senior manager of Diversity Management & Ethic [sic]. My primary role was to develop strategies that would result in Respondent becoming a more diverse, inclusive, and ethical organization.
>
> On April 19, 2004, I was informed by Rick Schostek (White/Male), Vice President Support Services & General Counsel, and Hank Real (White/Male), Senior Manager of Associate Relations that I was being terminated for disrespectful behavior and inaccuracies in communication.
>
> During my employment, I never received a letter to my file or any type of progressive discipline in the form of coaching or counseling regarding my behavior. Although, I did received [sic] positive performance evaluations during the year 2003.
>
> I am also aware that my male predecessor received higher wages than I. He also received 20% bonuses, whereas I received a much lower percentage in bonuses.
>
> Also, I uncovered discriminatory, inequitable, and unethical practices at the company and made senior officials in the company, including the president, aware of them. I believe my termination was the result of these actions coupled with my efforts to encourage Respondent to comply with EEOC and OFCCP guidelines and regulations.
>
> I believe I was denied equal wages because of my sex, female; discharged because of my race, black; sex, female; and in retaliation for making Respondent aware of discriminatory and unethical practices going on in the workplace in violation of Title VII of the Civil Rights Act of 1964, as amended.

Exhibit A, Motion for Partial Dismissal (Doc. 24). The EEOC investigated Ways' charge, and issued its Determination on April 20, 2005. The relevant portion of the Determination states as follows:

> The investigation does not reveal that Charging Party was discriminated against when she was denied equal pay due to her sex, female.
>
> The investigation revealed evidence to establish that Charging Party was discriminated against due to her race, Black and retaliated against when she was discharged. The evidence also shows that prior to being discharged the Charging Party was also subjected to different terms and conditions of employment because of her race and based on retaliation.

Exhibit B, Motion for Partial Dismissal (Doc. 24).

Ways maintains that her Title VII disparate impact and hostile work environment claims "arise out of, and can be integrally connected to" her claims of race discrimination. Memo. in Opposition (Doc. 34) at 9. Ways contends that her charge would have prompted an investigation into her hostile work environment and disparate impact claims. *Id.* at 10.

Even applying the most liberal construction in Ways' favor, the Court finds, as a matter of law, that Ways' EEOC charge would not have given rise to an investigation of claims based upon hostile work environment or disparate impact. Ways' charge plainly sets forth claims for discrimination based on race and sex, retaliation, and unequal pay. Her charge refers to alleged "discriminatory, inequitable, and unethical practices" at Honda. Nonetheless, Ways does not suggest that she was subjected to these practices. Rather, she made officials at Honda aware of the practices, and Honda then allegedly terminated her employment in retaliation. Hence, the allegations logically refer to her retaliation claim. Construed liberally, Ways' charge does not remotely call

to mind claims for hostile work environment or disparate impact. The Court therefore concludes that Ways failed to exhaust her administrative remedies with respect to her Title VII claims for hostile work environment and disparate impact. Accordingly, Honda is entitled to dismissal of Ways' Third, Fifth, and Thirteenth Claims for relief.

### B. Disparate impact: specific policy

Honda next argues that Ways' federal and state law disparate impact claims are subject to dismissal because Ways has failed to isolate and identify any specific policy or practice that injured her. Ways relies on the following two paragraphs in her complaint to establish her disparate impact claim:

> 125. Plaintiff-Intervener challenged those employment policies and practices at Defendant HAM that resulted in disparities between protected and non-protected classes. Specifically, Plaintiff-Intervener determined that Defendant HAM's employment policies and practices resulted in qualified minority candidates being denied equal job consideration and being ineligible for promotions. Likewise, jobs were not being posted and there were compliance issues, particularly in areas of under-utilization.
>
> 126. Defendant HAM's challenged employment policies and practices had an adverse effect on African-American and other minority employees at the company.

Complaint (Doc. 17) at 14.

Honda maintains that a plaintiff asserting a disparate impact claim must isolate and identify the specific policy or practice giving rise to the disparity. The requirement was applied to a claim arising under the Age Discrimination in Employment Act ("ADEA") in *Smith v. City of Jackson,* 544 U.S. 228 (2005):

> Turning to the case before us, we initially note that petitioners have done little more than point out that the pay plan at issue is relatively less generous to older workers than to younger workers. They have not identified any specific test, requirement, or practice within the pay plan

> that has an adverse impact on older workers. As we held in *Wards Cove*, it is not enough to simply allege that there is a disparate impact on workers, or point to a generalized policy that leads to such an impact. Rather, the employee is "'responsible for isolating and identifying the *specific* employment practices that are allegedly responsible for any observed statistical disparities.'" 490 U.S., at 656, 109 S.Ct. 2115 (emphasis added) (quoting *Watson*, 487 U.S., at 994, 108 S.Ct. 2777). Petitioners have failed to do so. Their failure to identify the specific practice being challenged is the sort of omission that could "result in employers being potentially liable for 'the myriad of innocent causes that may lead to statistical imbalances ....'" 490 U.S., at 657, 109 S.Ct. 2115.

*Id.* at 241. One of the decisions Honda cites illustrates the application of this principle. See *White v. American Axle & Mfg., Inc.*, No. 05-CV-72741-DT, 2006 WL 335710 (E.D. Mich. Feb. 14, 2006). *White* presented claims under both Title VII and the ADEA. The defendant in *White* moved to dismiss all of the plaintiff's disparate impact claims, arguing that the plaintiff had failed to identify a facially-neutral policy that caused the disparity. The court in *White* analyzed the Title VII and ADEPA claims separately. Following *Smith*, the court applied the *Wards Cove* standard to the plaintiff's ADEA disparate impact claim. *White*, at *5-6. The court in *White* also recognized:

> "1991 amendments to Title VII superseded portions of *Wards Cove Packing Co. v. Antonio*, 490 U.S. 642, 651, 109 S.Ct. 2115, 104 L.Ed.2d 733 (1989), and *Watson v. Fort Worth Bank & Trust*, 487 U.S. 977, 108 S.Ct. 2777, 101 L.Ed.2d 827 (1988), which held that a plaintiff in a disparate impact case must show the discriminatory effect of specific practices on protected group members. The amendments provide that if the plaintiff demonstrates that 'the elements of a respondent's decisionmaking process are not capable of separation for analysis, the decisionmaking process may be analyzed as one practice.' 42 U.S.C. § 2000e-2(k)(1)(B)(i)."

*Id.* at *3 (quoting *Phillps v. Cohen*, 400 F.3d 388, 397 (6th Cir. 2005)). In the instant case, however, Ways does not invoke the "not capable of separation" analysis. Moreover, the court in *White* concluded that even under the 1991 amendments to Title

VII, a plaintiff must still identify, at the pleading stage, a specific facially neutral policy or practice that resulted in disparate impact. *Id.* Finding that the plaintiff had failed to meet this standard, the court in *White* dismissed the plaintiff's claims.

Here, Ways has likewise failed to identify any specific facially neutral policy or practice that resulted in disparate impact. Ways does not cogently explain why her disparate impact claims should not be dismissed on this basis. Rather, she discusses *United States v. City of Warren*, 138 F.3d 1083, 1094 (6th Cir. 1998), for the proposition that the *Wards Cove* requirement concerning labor statistics is relaxed when such statistics are not reasonably available. Ways' argument misses the mark. Honda does not seek dismissal of Ways' disparate impact claims because Ways has failed to plead statistics; rather, Honda argues dismissal is required because Ways has failed to identify any facially neutral policy or practice that resulted in disparate impact. Accordingly, the Court rejects Ways' arguments based on *Warren,* and will dismiss Ways' Third and Eleventh Claims.

## C. Standing

In the alternative, Honda argues that Ways' disparate impact claims must be dismissed because Ways lacks standing to assert such claims. Specifically, Honda maintains Ways does not have standing because she fails to allege that she was personally injured by the subject policies or practices.

To establish constitutional standing to bring a claim under Title VII, the plaintiff must show that she was personally injured by the defendant's alleged discrimination. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992); *Phillips,* 400 F.3d at 396. In the instant case, Ways alleges as follows:

> Specifically, Plaintiff-Intervener determined that Defendant HAM's employment policies and practices resulted in qualified minority candidates being denied equal job consideration and being ineligible for promotions. Likewise, jobs were not being posted and there were compliance issues, particularly in areas of under-utilization.

Complaint (Doc. 17) at 14.

Ways does not meaningfully respond to Honda's standing argument. Rather, she contends she was terminated because of her opposition to the subject policies and practices. This argument, however, is relevant to her retaliation claim, which Honda does not seek to dismiss, not her disparate impact claims.

Honda hired Ways, so Ways cannot assert she was injured because she was denied equal job consideration. Ways does not allege that she was denied a promotion; therefore she cannot maintain she was injured by any policy affecting eligibility for promotions. Similarly, Ways does not contend she was injured as a result of the manner in which jobs were posted by Honda, or by any alleged under-utilization. In short, Ways has failed to plead any facts indicating that she was personally injured by any policies or practices at Honda that allegedly led to disparate impact. Consequently, Ways lacks standing to assert her disparate impact claims. For this additional reason, Honda is entitled to dismissal of Claims Three and Eleven.

### D. Public policy

Honda next asserts that Ways' claim of wrongful discharge in violation of Ohio public policy must be dismissed because Ways has adequate statutory remedies for her termination. Ways expressly concedes that her public policy claim is subject to dismissal. Memo. in Opp. (Doc 34) at 15-16. The Court will therefore dismiss Ways' Fourteenth Claim.

### E. Fraud

Honda argues Ways' fraud claim must be dismissed because Ways failed to plead the claim with sufficient particularity. Specifically, Honda contends that Ways has not identified any material representation upon which she relied. Ways maintains that she has identified such a representation, namely, Honda's statement that Ways was hired to create a more diverse workforce at Honda.

Fed. R. Civ. P. 9(b) requires a plaintiff to plead a claim of fraud with particularity. To satisfy Rule 9(b), a plaintiff must plead specifically the times, places and contents of the fraud. *Ullmo ex rel. Ullmo v. Gilmour Academy*, 273 F.3d 671, 678 (6th Cir. 2001). In *Ullmo*, the plaintiffs based their fraud claims upon the defendant's representation in its handbook that "it would work to fully develop its students and would respect its students differing abilities and styles of learning." 273 F.3d at 677. The court in *Ullmo* held that such a statement was too vague and indefinite to support a claim for fraud. *Id.* at 678.

*Ullmo* is on point. Like the representation at issue in *Ullmo*, the representation allegedly made by Honda in the instant case is indefinite and aspirational. The Court therefore finds that Ways has failed to plead her fraud claim with particularity as required by Rule 9(b). Accordingly, Ways' Sixteenth Claim will be dismissed.[1]

### F. Non-economic damages for breach of contract and promissory estoppel

Lastly, Honda seeks an order striking the non-economic damages components

---

[1] Ways seeks leave to amend her fraud claim. Ways, however, does not indicate what such an amendment would consist of, or how it would cure the defect in her pleading. The Court therefore denies Ways' request to amend her fraud claim.

of Ways' breach of contract and promissory estoppel claims. Honda asserts that damages for emotional distress are not available for breach of contract or promissory estoppel.

Ways relies on a decision by the Ohio Supreme Court that carved a narrow exception to the rule that damages for emotional distress may not be recovered for breach of contract. *See Kishmarton v. Williams Bailey Construction, Inc.*, 93 Ohio St.3d 226 (2001). *Kishmarton*, however, is expressly limited to cases involving transactions between vendees and building vendors. *Brainard v. American Skandia Life Assurance Corp.*, 432 F.3d 655, 665 (6th Cir. 2005). The facts of the instant case as pleaded by Ways do not fall within the narrow exception identified in *Kishmarton*. As a result, Honda is entitled to an order striking the non-economic damages components of Ways' breach of contract and promissory estoppel claims.

## IV. Disposition

Based on the above, the Court **GRANTS** defendants' motion for partial dismissal (Doc. 24). Accordingly, the Court **DISMISSES** Ways' Third, Fifth, Eleventh, Thirteenth, Fourteenth and Sixteenth Claims for Relief. In addition, the Court **STRIKES** the non-economic damages components of Ways' Fifteenth and Seventeenth Claims for Relief.

The Clerk shall remove Doc. 24 from the Court's next Civil Justice Reform Act motions report.

**IT IS SO ORDERED.**

_____
MICHAEL H. WATSON, JUDGE
UNITED STATES DISTRICT COURT