```
             IN THE UNITED STATES DISTRICT COURT
              FOR THE SOUTHERN DISTRICT OF OHIO
                       EASTERN DIVISION
```

Equal Employment Opportunity
Commission,                         :

      Plaintiff,                   :

and                                 :         Case No. 2:06-cv-0233

Monica P. Ways,                     :         JUDGE WATSON

      Plaintiff-Intervener,        :

  v.                                :

Honda of America Mfg., Inc.,        :

      Defendant.                   :

<u>OPINION AND ORDER</u>

    This employment discrimination case is before the Court to address two filings raising issues relating to discovery.  The first is defendant Honda of America Mfg.'s motion of December 13, 2007, which requests the Court to quash a deposition subpoena, to declare certain documents privileged, to compel their return, and to award sanctions.  The other is a document filed by Plaintiff-Intervener Monica P. Ways on January 22, 2008 which is entitled "Reply in Support of Plaintiff-Intervener Monica Ways' Amended Notice of Videotaped Deposition Decus Tecum of Rick Schostek."  The Court will deal with these filings in reverse order.

                                              I.

    The Court turns first to the issues raised by Ms. Ways' January 22, 2008 filing.  Although the filing is not styled as a motion, it does request the Court to take certain action.  For the following reasons, the Court concludes that no action is needed with respect to the matters raised in that filing.

By way of background, according to Ms. Ways' memorandum, she served an amended notice of videotaped deposition *duces tecum* of Rick Schostek, a Honda official, on December 27, 2007. The notice scheduled Mr. Schostek's deposition for January 4, 2008, and requested that he bring with him certain documents, including notes which he received from Mary Ellen Fairfield and Lynn Dennison concerning a complaint made about Ms. Ways by David Campbell, a lawyer at Vorys, Sater, Seymour and Pease, and any notes which either he or Ms. Fairfield wrote concerning Ms. Ways and relating to any of the matters set forth in the complaint. Honda filed objections to the notice on January 3, 2008 contending, among other things, that under Fed.R.Civ.P. 34 the document request was improper because it did not give Mr. Schostek 30 days within which to produce the documents. In her memorandum, Ms. Ways argues that Rule 34 does not apply to her document request, but rather Rule 45, which does not contain a 30-day response provision.

Honda makes a number of counter-arguments in its January 25, 2008 memorandum. The only one which the Court need consider, however, is that Honda has affirmatively represented, both at the deposition as part of a telephone conference with the Court, and in its memorandum, that all non-privileged documents described in the notice of deposition had already been produced. As Honda succinctly states on page five of its reply memorandum, Honda "has produced all non-privileged documents within the scope of the EEOC document request and the Amended Notice. It has nothing more to produce."

Whatever view the Court may have of the procedural issues raised by the parties, one thing is clear. A party cannot be compelled to produce documents for a second time which it has already produced once. Ms. Ways does not contend in her memorandum that Honda's representation concerning its production

2

of non-privileged documents is inaccurate.  Rather, at page five of her memorandum she states, somewhat obliquely, her belief that any privileged notes which have been withheld "must be disclosed if they are a defense to the termination of Ways or a justification for that termination."

Presumably, the privileged documents which Honda has withheld have been identified properly on a privilege log.  The information on the privilege log should be detailed enough to allow Ms. Ways or plaintiff EEOC, if either so chose, to file a motion challenging Honda's assertion of the attorney-client privilege.  If such a motion were presented, Honda would have the opportunity to respond by justifying its invocation of the privilege, and the Court would then have a record upon which to determine whether the privilege was properly invoked.  None of that has occurred here.

The Court did caution Honda's attorneys, during the course of the telephone conference conducted as part of Mr. Schostek's deposition, to examine any withheld notes in order to insure that the invocation of attorney-client privilege was appropriate.  The Court stated that the notes could be withheld only if they reflected communications between Honda and its attorney, Ms. Fairfield, about matters for which legal advice was being sought or about which Ms. Fairfield was acting in the capacity of an attorney.  Factual information which Ms. Fairfield may have relayed concerning Mr. Campbell's complaint does not appear to fall in that category.  Additionally, if any withheld notes reflected Ms. Fairfield's business advice to Mr. Schostek concerning what, as a business matter, he might wish to do with the information received from Mr. Campbell, as opposed to legal advice advising Mr. Schostek what he was entitled to do with that information, such business advice would not be privileged.  The Court assumes that Honda's counsel followed its admonition and

that the only notes being withheld relate to matters of legal advice.  Under the current circumstances, when no motion to compel production of privileged documents has been presented, and no direct arguments have been made to the Court concerning whether Honda's invocation of privilege with respect to these documents is appropriate, there is no basis for the Court to take any action beyond that which has already occurred.  Consequently, no relief will be granted with respect to the January 22, 2008 filing.

II.

The other discovery motion requiring a ruling relates to two subpoenas issued to Tracy McPherson, a former Honda employee.  Ms. McPherson was deposed on October 12, 2007, and Ms. Ways then served her with a document subpoena.  According to Honda, when Ms. McPherson responded to that document subpoena, she produced documents covered by the attorney-client privilege.  Honda asked counsel for both Ms. Ways and the EEOC to return these documents, but they have not done so.  Additionally, Ms. Ways noticed Ms. McPherson for a second deposition.  Honda has asked the Court to quash the subpoena.  For the following reasons, the Court concludes that Honda is entitled to have any privileged documents returned, and is also entitled to an order quashing the deposition subpoena.

Like many discovery matters, a precise procedural history of what occurred is essential to determining whether the party requesting the Court's intervention is entitled to relief.  The Court will therefore state the procedural history of this matter to the best of its ability based upon the parties' filings and the Court's docket.

The first subpoena at issue is a document subpoena which was prepared by Ms. Ways' counsel on October 19, 2007, and apparently served on Ms. McPherson by regular mail on the same day.  That

subpoena requested Ms. McPherson to produce any personal files she maintained while employed at Honda.  The date and time for production of those documents was established as November 5, 2007 at Ms. Ways' counsel's office in Dayton, Ohio.  However, the record is silent as to whether a copy of this subpoena was served on Honda as required by Fed.R.Civ.P. 45(b)(1), which requires that "[p]rior notice of any commanded production of documents...shall be served on each party in the manner prescribed by Rule 5(b)."  The subpoena itself has never been filed with the Court, the copy attached to Honda's motion as Exhibit 7 to the affidavit of Sarah Morrison does not contain a certificate of service, and there has otherwise been no compliance with Fed.R.Civ.P. 5(d).

It does not appear that counsel for Honda attended the document production.  However, after Ms. McPherson produced documents in response to the subpoena, Ms. Ways' counsel declined to provide Honda with a copy of them, stating that Honda could get its own set from Ms. McPherson.  Honda was apparently unable to do so because she provided the original documents to Ms. Ways' counsel.  Honda did not see the produced documents until December 6, 2007.

After reviewing these documents, Honda immediately determined that a number of them appear to be privileged.  During Ms. McPherson's deposition, Honda addressed any privileged communications Ms. McPherson might have been privy to while employed at Honda by stating that Honda was not waiving the attorney-client privilege with respect to such communications. After learning that Ms. McPherson had produced documents to Ms. Ways' counsel, but prior to seeing the documents, Honda again raised the issue concerning privileged materials and again noted that Ms. McPherson had no authority to waive Honda's attorney-client privilege.  After obtaining copies, Honda prepared a chart

listing those documents produced by McPherson which it claims to be privileged. It also asked counsel for Ms. Ways and the EEOC to return their copies of these documents, but they have not done so.

It would have been helpful for the Court to know whether Honda was served with a copy of the document subpoena directed to Ms. McPherson at or before the time set for production. Such service is, of course, required by Rule 45(b)(1). One of the reasons the Rule incorporates this requirement is "to afford the other party the opportunity to object to the production or inspection" of documents described in the subpoena. See Advisory Committee Notes to 1991 Amendment to Rule 45; see also Automotive Inspection Services v. Flint Auto Auction, 2007 WL 3333016 (E.D. Mich. Nov. 9, 2007). One of the bases for an objection to a subpoena *duces tecum* directed to a non-party is that the subpoena calls for the production of privileged documents. See Rule 45(c)(3)(A)(iii). In some circumstances, a party to litigation can waive the attorney-client privilege by failing to object to a subpoena that clearly calls for the production of privileged documents. American Home Assurance Co. v. Freemont Indemnity Co., 1993 WL 426984 (S.D.N.Y. Oct. 18, 1993).

Here, if Honda was not served with a copy of the subpoena *duces tecum*, Honda's first opportunity to object to any production of privileged documents would have come only after it viewed the documents on December 6, 2007. Were that the case, there would be no question that Honda's objection was timely, and that the only issue would be whether the documents are privileged. However, because the record is silent on the service issue, the Court will also analyze the question under the assumption that Honda had advance notice of the issuance of the document subpoena and therefore had an opportunity to make its objection known prior to Ms. McPherson's production of the

6

documents.  Under those circumstances, the Court must decide whether Honda's failure to make that objection constitutes a waiver of the attorney-client privilege which might otherwise protect these documents from disclosure.

Under this latter scenario, Honda's decision to permit Ms. McPherson to produce privileged documents is akin to its own production of such documents through inadvertence.  In fact, Honda has analyzed the issue in this fashion.  In determining whether an inadvertent waiver has occurred which, despite the production of privileged documents, entitles the producing party to their return, this Court considers those factors set forth in Nilavar v. Mercer Health Systems - Western Ohio, 2004 WL 5345311 (S.D. Ohio March 22, 2004) (Rice, J.).  Those factors include whether the party whose privileged documents have been produced took reasonable precautions to prevent the production, the number of documents disclosed, the extent of the disclosure, the promptness of the measures taken to rectify the disclosure, and the interests of justice.

With respect to the first factor, Honda asserts that it took reasonable precautions to prevent the production of privileged documents by asserting at Ms. McPherson's deposition that it did not waive any attorney-client privilege with respect to communications between Ms. McPherson and Honda's counsel, and by questioning in its post-production letters whether she had produced privileged documents.  Given the fact that Honda was apparently on notice as early as the deposition taken on October 12, 2007, that Ms. McPherson might have privileged documents, its failure to make a written objection to the subpoena issued to her (assuming, again, that it had prior notice of the issuance of the subpoena) is somewhat unreasonable.  The same could be said with respect to its failure to attend the document production if it believed that Ms. McPherson might be producing privileged

documents.  That would have been an ideal time for it to review the documents at the same time as counsel for the opposing parties and to assert its claim of privilege.  By not doing either of these things, it created the opportunity for Ms. McPherson to produce privileged documents and for them to be viewed by counsel for the EEOC and Ms. Ways.  Consequently, Honda may not have taken reasonable steps to prevent the production of these privileged documents.

That, however is not the end of the inquiry.  In this case, it appears that only a handful of privileged documents were disclosed, and the extent of the disclosure of privileged information was neither broad nor necessarily related in any significant way to the issues in this litigation.  It is also true that, promptly after seeing these documents, Honda made every effort to obtain their return.  It clearly would have made its request almost immediately after the documents were produced but for the inexplicable refusal of counsel for Ms. Ways and the EEOC to provide Honda with a copy of those documents.  Once Honda contacted Ms. McPherson and discovered that she had turned her originals over to Ms. Ways' counsel, Ms. Ways' counsel still delayed sharing those documents with Honda.  Thus, Honda acted as promptly as the circumstances permitted to rectify the disclosure.

The final consideration for the Court is the interests of justice.  Again, evaluating this factor depends to some extent on whether Honda was given prior notice of the issuance of the document subpoena.  If Honda had been aware in advance of the potential for disclosure of these documents, but failed either to make a formal objection to the document subpoena or to attend the document production to see what Ms. McPherson was producing, it may have been responsible to some extent for the disclosure.  On the other hand, even under those circumstances, it may not have

been appropriate for opposing counsel to accept clearly privileged documents from Ms. McPherson given Honda's express invocation of that privilege at her October 12, 2007 deposition. This concept is more fully explored below, and it suggests that the interests of justice favor a return of the documents even if Honda had been given prior notice of the document subpoena.

If Honda was not aware that a subpoena had been issued to Ms. McPherson, the interests of justice are evaluated entirely differently. Sending a subpoena for documents to a non-party who is a former employee of a party, without providing notice that this has occurred, is essentially an *ex parte* communication with that employee. While the applicable ethical guidelines do not prohibit *ex parte* contact with former employees, they do require the party initiating the contact to take every effort to avoid the unauthorized disclosure of attorney-client communications. Thus, one court, construing Model Rule 4.4 ("Respect for the Rights of Third Persons"), concluded that "[i]n accordance with this rule, counsel must refrain from seeking, inducing or listening to the disclosure of any matter protected by the attorney-client privilege." Brown v. St. Joseph County, 148 F.R.D. 246, 255 (N.D. Ind. 1993). In fact, an attorney who initiates contact with a former employee of a corporate opponent in litigation is "ethically obligated to advise [the former employee] not to divulge information subject to the attorney-client privilege." Concerned Parents of Jordan Park v. Housing Authority of City of St. Petersburg, 934 F.Supp. 406, 409 (M.D. Fla. 1996). Moreover, although "an attorney may have *ex parte* contact with an unrepresented former employee of an organizational party...the attorney may not inquire into areas subject to the attorney-client privilege...." Smith v. Kalamazco Opthamology, 322 F.Supp. 2d 883, 890-91 (W.D. Mich. 2004). Given these ethical restrictions, which do not vanish entirely just

9

because the contact with the former employee results from the issuance of a subpoena, the interests of justice strongly favor an order that the documents be returned.

Here, balancing all of the factors required by <u>Nilavar</u>, and taking into account the fact that Honda appears to have been unaware that Ms. McPherson retained documents after she left Honda's employ which contained attorney-client privileged communications, the Court agrees that any disclosure which occurred in this case was, at worst, inadvertent and did not constitute a waiver of the privilege.

This analysis does not, of course, address the question of whether any of the documents at issue are privileged.  Ms. Ways asserts that the Court should not take Honda's word for the fact that these documents are privileged.  In response, Honda argues, citing to Rule 26(b)(5)(B), that once it makes a claim of privilege, it is the obligation of the party who received the privileged documents to "present the information to the Court under seal for a determination of the claim."  Ms. Ways has not done so.  Further, Honda asserts that it has provided Ms. Ways' counsel with sufficient information for counsel to determine that the documents in question constitute requests by Ms. McPherson to legal counsel for legal advice.

It may well be that Ms. Ways does not contest that one or more of the produced documents are privileged communications and has declined to return them only because she wished to litigate the issue of whether there had been a waiver of the privilege by inadvertent disclosure.  If that is the case, that basis for refusing to return the documents no longer exists.  On the other hand, if there is a genuine dispute about whether any of the documents constitutes a privileged communication, the parties shall arrange to have those documents submitted to the Court for an *in camera* review.  That shall occur within ten days of the

date of this order.  Only those documents about which there is a legitimate basis for disagreement should be submitted, however.

The Court now turns to the issue of whether a second deposition of Ms. McPherson is justified.  The sole ground advanced by Ms. Ways for taking the second deposition is that she should have received the additional documents she obtained from Ms. McPherson from Honda in advance of the first deposition.  Because Honda did not produce those documents, Ms. Ways was unable to question Ms. McPherson about them.  She asserts that Honda has not met its "heavy burden" of justifying an order quashing the deposition subpoena.

Here, the proper Rule of Civil Procedure to be applied to the issue of whether Ms. McPherson can be re-deposed is Rule 30(a)(2).  That rule provides that a party "must obtain leave of court" to take a deposition if "the person to be examined has already been deposed in the case...."  Rule 30(a)(2) further states that such leave shall be granted to the extent consistent with the principles stated in Rule 26(b)(2).  That Rule, in turn, requires the Court to limit discovery which is unreasonably cumulative or duplicative or if the party seeking discovery "has had ample opportunity...to obtain the information sought...."  Thus, the question becomes whether Ms. Ways had ample opportunity to depose Ms. McPherson with respect to these documents at the first session of her deposition.  A secondary, but also important, question is whether the additional deposition would be unreasonably duplicative or burdensome or whether the cost of conducting the deposition outweighs any potential benefit of the deposition.  See <u>Fresenius Medical Care Holdings v. Roxane Laboratories</u>, 2007 WL 764302 (S.D. Ohio March 9, 2007).

Ms. Ways did not send Ms. McPherson a subpoena for documents prior to her first deposition.  She did request that Honda provide documents from Ms. McPherson's files, and Honda did so.

However, it was clearly known to Ms. Ways prior to the deposition that Ms. McPherson was no longer employed by Honda.  As a result, Ms. Ways should have appreciated the fact that Honda did not have control over Ms. McPherson.  Consequently, while Honda was entitled to ask Ms. McPherson to produce documents responsive to the earlier document request (and, according to its counsel's affidavit, it did so), Ms. McPherson was under no obligation to provide Honda with any documents or, as it turns out, to provide Honda with a complete set of documents.  Rather, Ms. McPherson apparently chose to withhold certain documents from Honda and to produce them only in response to the subpoena.

The reluctance or refusal of a non-party to provide documents in response to a voluntary request is not unanticipated in litigation.  It is certainly the better practice to send a non-party a document subpoena prior to that person's deposition.  It is ordinarily unreasonable to rely upon the former employer of a non-party witness to obtain all documents from that person in response to a document request to the employer.  In fact, the former employer has no obligation to seek such documents from a former employee and, in many cases, has no reason to believe that the former employee has retained any such documents.  Consequently, the Court believes that Ms. Ways had ample opportunity to obtain these documents directly from Ms. McPherson prior to her deposition.  Further, it would have been a simple matter for the deposition subpoena to have included a *duces tecum* in order to insure that Ms. McPherson had not withheld any documents from production.  Having failed to take those steps to prevent exactly the situation which occurred here, Ms. Ways cannot reasonably be heard to complain that she cannot take a second deposition of the same witness, especially when Honda bears no responsibility for Ms. Ways' failure to obtain these documents prior to Ms. McPherson's deposition.

Moreover, Honda has argued persuasively that the additional documents produced are largely irrelevant to any claims asserted by Ms. Ways in this case.  Apparently, they relate to matters which occurred prior to Ms. Ways' employment at Honda and to subjects entirely unrelated to her employment or the termination of that employment.  The Court is not persuaded that there would be any benefit to the parties from an additional deposition and concludes that any benefit would be outweighed by the cost of that proceeding.  For both these reasons, the Court concludes that the deposition ought not to go forward.

### III.

Based upon the foregoing, the motion of defendant Honda of American Mfg. for an order quashing the subpoena of Tracy McPherson, declaring certain documents privileged and compelling their return, for a protective order, and for the award of reasonable expenses (#91) is granted as follows.  The deposition subpoena is quashed.  The documents in question shall be submitted by the parties to the Court for an *in camera* inspection within ten days.  Only those documents about which there is a legitimate difference of opinion concerning whether they are privileged attorney-client communications shall be submitted. Neither the EEOC nor Ms. Ways may disclose or make any use of the documents pending the Court's review of the documents.  The Court declines to award expenses in connection with this motion, primarily because the record is silent as to whether Honda was given advance notice of the issuance of the document subpoena to Ms. McPherson and thereby had some opportunity to protect its interests in privileged documents prior to or at the time of their initial production.

Any party may, within ten (10) days after this Order is filed, file and serve on the opposing party a motion for reconsideration by a District Judge.  28 U.S.C. §636(b)(1)(A), Rule 72(a), Fed. R.

Civ. P.; Eastern Division Order No. 91-3, pt. I., F., 5.  The motion must specifically designate the order or part in question and the basis for any objection.  Responses to objections are due ten days after objections are filed and replies by the objecting party are due seven days thereafter.  The District Judge, upon consideration of the motion, shall set aside any part of this Order found to be clearly erroneous or contrary to law.

This order is in full force and effect, notwithstanding the filing of any objections, unless stayed by the Magistrate Judge or District Judge.  S.D. Ohio L.R. 72.4.

/s/ Terence P. Kemp
United States Magistrate Judge